NIcholsoh, C. J.,
delivered the opinion of the court.
Complainant and defendant are brothers and tenants in common of a valuable tract of land of 400 acres, situated in Washington county. Being unable to agree as to a partition of the land, they have submitted the question that divides them to the court of equity. The record exhibits two brothers, in old age,' differing honestly as to their rights, — insisting upon their respective claims with an earnestness, persistence and pertinacity which appear almost incredible in view of thé fraternal affection and confidence which have *670 marked their whole lives, and which, as far as the record shows, have been maintained unbroken through the present litigation. It seems unaccountable tbat two brothers of fine pi’actical sense, of more than ordinary intelligence, of unquestionable integrity, cherishing towards each other feelings of genuine affection •and confidence, should disagree so widely as to their rights and interests, and should adhere so pertinaciously to their respective views of their rights as dependent upon' the facts, about which there is a substantial agreement, — should have failed, after repeated' efforts, to compromise or adjust their differences. Instead of any such compromise, they have devoted the last three years so earnestly and industriously in the prosecution -of- their respective claims, that they have come to final hearing, with a record of nearly four hundred pages.
It appears that, about 1838, complainant and defendant purchased of Jacob Miller the land in eontro-■versy, at the price of $5,000, each paying one-half of the purchase money and taking from Miller a conveyance of the title to them as' tenants in common. Before the conveyance was made, defendant, who was the elder brother, expressed an anxiety to own the entire tract, proposing to pay to complainant his portion- of the purchase money when he should receive an amount sufficient therefor which was due to him in South Carolina, and which he expected to collect in the course of a year or two. To this proposition complainant assented, but the deed from Miller was .nevertheless taken to' them as joint purchasers, and *671 no written memorandum of their agreement was made or signed.
The improvements on the place, consisting of a hrick dwelling-house and the usual outhouses, were situated near the centre of the tract and alongside of a lane or road, which ran from north-west to southeast, dividing the tract nearly into equal parts. They agreed to occupy the house and lots around it in common, and to recognize the lane or road as a temporary division line — complainantto cultivate the portion on the south side of the division line, and defendant that on the north side. The improvements were situated on the portion south of that line. ■ The two brothers lived together in the house for six years, each cultivating the portion agreed on and using the lots around the dwelling in common — neither accounting to the other for any rents.
In 1844, complainant purchased another tract about three miles distant and removed to it, where he has ever since lived, leaving defendant in possession of the whole tract. Upon removing, an agreement was made by which the temporary division line was to continue to be recognized, and defendant was to account to complainant, as defendant says, for the products of the several fields which complainant had cultivated, or, as complainant says, for the products raised on the portion south of the division line. It is shown that complainant has received the rents regularly of the several fields formerly cultivated by complainant, and that no complaint had ever been made by complainant that he had not received all the *672 rents he was entitled to. ° It appears that after complainant removed, defendant did some clearing of timbered land on both sides of the division line, enclosed some new fields, planted orchards, and had accounted to complainant for none of the products of the new fields or orchards, and that complainant had never claimed any of these products by way of rents. Defendant also made various improvements in adding other outhouses, repairing the old buildings and putting a large addition to the dwelling-house, all of' which improvements cost several thousand dollars. There are two springs on the tract — one about 240' yards from the dwelling-house and eight or ten steps from the temporary dividing line, in the gap of a ridge, with abrupt hills on either side; this spring when full runs down near the dividing line on the upper side of the farm, close by the house, to the road, and then down the road. The other is a small drip spring, situated on the opposite side of the dividing line from the other spring, and about fifty yards from it.
As to the general facts as detailed, there is no material conflict between the parties, either in their own testimony or in that of the numerous witnesses examined by them. The difference is as to the opinions of the parties and their respective witnesses as to the deductions to be drawn from the facts in regard to the practicability of an equitable or advantageous division of the farm. Complainant and some eighteen or twenty witnesses are of opinion that the tract is susceptible of an equitable division, and they *673 sustain their conclusions by reasoning on the facts. Defendant and about a like number of witnesses are of opinion that a division could not be made without serious inconvenience or injury to the parties, and this conclusion is sustained by reasoning as to the scarcity of water, location of the improvements, the probable annoyance from having a common spring and common water, etc.
But it is not shown by the facts, nor by the opinions of the witnesses on either side, that a partition is impracticable. It is clear, upon all the facts, that the tract can be divided into two farms of about 200 acres each, and therefore a partition cannot be resisted on the ground that the premises are so situated that' partition thereof cannot be made. It is insisted, however, for defendant that the premises are of such description that it would be manifestly for the advantage of the parties that the same should be sold instead of partitioned. Each tenant in common of land has the right to a partition of the premises, except where such partition is impracticable, or where, from the situation of the premises, a sale would be manifestly advantageous to all the parties interested: Code, sec. 3293.
In this case the parties differ on the question, whether the premises are so situated that a sale instead of partition would be advantageous to them. Complainant, who has a clear legal right to a partition, claims that he shall enjoy his portion of the land in kind, and that a sale would not be to his advantage. Defendant insists that a sale instead of a ' *674 partition would be manifestly advantageous to complainant as well as himself. In this state of the controversy, it devolves on the defendant to show clearly by the facts that a sale instead of a partition would be advantageous to complainant.' Nothing short of the clearest and most satisfactory proof could justify the court in ordering a sale against the protest of one of the tenants in common. Without referring to or commenting on the testimony, we are clear in our convictions that defendant has failed to make out such a case as is contemplated by the statute. So far from its being made to appear manifestly that a sale would be advantageous to complainant, we are satisfied that the decided preponderance of the evidence is that the land is susceptible of an equitable division, and that while a sale, under the peculiar .circumstances of the case, might be advantageous to defendant, yet that complainant would not be a participant in the advantages. We are therefore of opinion that complainant is entitled to a decree for a partition of the land.
The only difficulty in making a partition of the land into two equal parts, quality and quantity both considered, is in the fact that there are valuable improvements on the land, many of which have been placed there by the defendant since the complainant removed from the place in 1844. But the proof as to the location of these improvements furnishes a satisfactory solution of this difficulty. It is shown that the temporary division line made by the parties divided the original tract into two parts, nearly equal *675 in quantity and quality. It appears that all the valuable improvements made on the place are situated near to. this division line, that they may readily be attached to either side. Instead, therefore, of instituting any inquiry into the value of these improvements, we see no difficulty in ordering that the improvements made by defendant shall be attached to that portion of the land which may be attached in the partition to defendant: 1 Story’s Eq., sec. 655. In adopting this mode of partition, it will be only necessary to take into the estimate, in the valuation of the two portions, the present value of the improvements remaining on the land which were there in 1844; and for such of those improvements as may fall on the portion of defendant, he will account to complainant for one-half of their present value; and if any of those improvements fall on the portion which may be allotted to complainant, he will account for one-half of the present value thereof to defendant. Of course, if in making the partition of the tract the commissioners, in carrying out the directions already given, should find it necessary to make any inequality in the present value of the two portions, such inequality will be charged to the party getting the more valuable portion.
The remaining question in the case relates to the rents during the time the whole tract has been occupied by defendant. It is in the settlement of this question that we are brought in contact with the most serious discrepancies and contradictions in the recollection of the parties, as developed in their re *676 spective depositions. We are satisfied that these discrepancies are the results of honest failures of recollection, probably somewhat influenced by a prosecution of their respective rights, characterized by more of zeal than the parties themselves are conscious of. We shall not undertake to reconcile these discrepancies or to determine whose recollection is the most reliable, but state the impression made on our minds and our conclusions drawn therefrom. We are satisfied that, from the date of the original purchase in 1838, there was an understanding that defendant was ultimately to become the owner of the whole tract, by refunding to complainant his portion of the purchase money. Why this personal understanding was never reduced to writing during so long a period, can only be explained upon the fact that the two brothers had a perfect understanding of the agreement and an abiding confidence in each other. The proof fails to give any satisfactory explanation of the failui’e of defendant to pay the half of the purchase money to complainant, especially as it appears that he was amply able, and actually vested large amounts in other lands. It is equally strange that complainant, during so long a period, failed either to require the payment or to notify defendant that the parol agreement was abandoned by him. As far as we can see, both parties remained quiescent until about 1858, when defendant concluded to add largely to the dwelling-house. Instead, even then, of going and tendering the money tq complainant, or of having the agreement reduced to writing, he only called on complain *677 ant and desired to know if he was still in the same ■notion about letting him have his interest. The parties differ widely in their recollection of this interview. According to defendant’s recollection, the response of complainant to his question satisfied him that he might go on with the improvements, and rely on getting complainant’s interest by paying back his purchase-money. Complainant’s recollection of this interview is, that when defendant asked him if he intended still for him to have the whole farm, complainant answered: “Why, yes; I’ve all the time intended you to have my interest, and never thought of selling to any one else whilst ^ you want it. You have promised and promised to purchase my half; why don’t you do it?” At that time, by reason of the railroad improvements, the tract of land had doubled in value; yet complainant failed . even then to notify defendant that he expected him to 'pay according to the increased value, though such he now says was his meaning; but defendant says he did not so understand him. The fact that defendant went on and expended several thousand dollars in erecting a new building, inclines us to the conclusion that he still understood that complainant recognized the original agreement; and we are of opinion that defendant made all of his improvements, and cleared land, and planted orchards, under the belief that he was to have the complainant’s portion by paying him back his purchase-money, and that in fact defendant treated the tract during all this time as virtually his own. It is true, that complainant says he often called on *678 defendant to complete the purchase, but that defendant as often put him off, and because he was his. brother he acquiesced. But defendant has no recollection of these repeated demands on him, as stated by complainant.
Taking all the circumstances together, we are of opinion that, in arranging the equities between the parties on the subject of rents, we are justified in assuming that from 1844 until the filing of the bill defendant occupied, improved and cultivated the whole farm as his own, and under the belief that all he had to pay was the original purchase-money and rent for the several fields which complainant had cultivated previous to 1844. It is true the agreement between, the parties was by parol, and therefore cannot be specifically enforced by defendant, but inasmuch as. complainant has availed himself of his undoubted right to disavow the parol agreement and insist on his por-, tion of the land, we are fully justified, under all the facts and circumstances, in holding, that as to the settlement of the question of rents, complainant is to beheld as having waived any claim therefor, except as. to the fields before specified, and as to which it is admitted the rents have satisfactorily been accounted for. The result is, that the land will be partitioned by commissioners as hereinbefore determined, but no account will be ordered for rents.
The cause is remanded for further proceedings, The costs of this court will be divided.